UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

-vs-

Case No. 08-20330
HON. AVERN COHN

DERVIN MOOD,

    Defendant.

_____/

## MEMORANDUM ON SENTENCING

I.

This is a criminal case. The defendant, Dervin Mood (Mood), is before the Court following his plea of guilty to a violation of 18 U.S.C. § 2252A(a)(2)(A), Receipt of Child Pornography. Charges of violation of 18 U.S.C. § 2251(a), Production of Child Pornography and 18 U.S.C. § 2252A(a)(5)(B), Possession of Child Pornography, were dismissed as part of a Rule 11 Plea Agreement. Mood appeared for sentencing on July 27, 2010 at which time the Court imposed a sentence of one (1) day in custody followed by a period of five (5) years of supervised release with special conditions, the first year of supervised release being a period of home confinement. This memorandum explains the reasons for the sentence imposed.[1]

---

[1]This memorandum is a revision and extension of the Court's bench comments of July 27, 2010.

II.

A.

The factual predicate underlying Mood's guilty plea is described in the Rule 11 Plea Agreement as follows:

> On or before April 2003, in the Eastern District of Michigan, and specifically, in Ypsilanti, Michigan, the defendant, Dervin Mood used his home computer to conduct online chats. During the course of these chats, Mood received numerous child pornography images via e-mail, believing that the attachments were child pornography and downloading them anyway. On or about August 2004, Mood's Ypsilanti home was searched pursuant to a federal search warrant. A subsequent forensic examination of Mood's computer revealed approximately 66 images of naked children, 39 of which constituted child pornography. Several of the child pornography images were found on Mood's computer as attachments to e-mail messages he had received. In addition, a number of printed child pornography images were recovered from Mood's house which matched the images found on his computer. The defendant stipulates that the child pornography images he received traveled in interstate commerce.

B.

1.

The Rule 11 Plea Agreement as to the applicable guidelines state:

> There are no sentencing guideline disputes. Except as provided below, defendant's guideline range under the 2008 version of the United States Sentencing Commission Guideline Manual is 57-71 months, as set forth in the attached worksheets

and goes on to state:

> Defendant may argue at sentencing that section 2G2.2 of the 2003 version of the Guideline Manual applies.

The Court finds that the 2003 version of the Guidelines Manual applies, as did

the Probation Department.  Accordingly, Mood's guidelines are calculated as follows:

| | | |
|---|---|---|
| § 2G2.4(a) | Receipt of Child Pornography | 15 |
| § 2G2.4(b)(1) | Material Involving Minor under 12 | +2 |
| § 2G2.4(b)(2) | 10 or More Images Involving Minor | +2 |
| § 2G2.4(b)(3) | Use of Computer | +2 |
| § 2G2.4(b)(5)(A) | At Least 10 Images But Fewer Than 150 | +<u>2</u> |
| Adjusted Offense Level (Subtotal) | | 23 |
| Adjustment for Acceptance of Responsibility | | <u>-3</u> |
| Total Offense Level | | 20 |

An Offense Level of 20, coupled with a Criminal History of I, calls for a sentence in the range of 33 to 41 months.

2.

The Presentence Investigation Report began the computation of the Guideline Range with an Offense Level of 27 by finding that the offense involved "causing, transporting, permitting or offering. . .a minor to engage in sexually explicit conduct [etc]." It arrived at the Offense Level of 27 as a consequence of including certain computer images documenting the abuse of a child. These images have sometimes been referred to in the record as the "Couch Images." These images were the predicate for Count One of the Indictment which was dismissed. The Probation Department erred in including them in the computation of the Offense Level. The government's sentencing memorandum (Doc. No. 27) expressly states:

> The government believes that it is bound by the guideline calculations stipulated in the Rule 11 plea agreement, which did not include responsibility for the Couch Images.

3

The Couch Images were the subject of extended argument following the initial sentencing hearing on April 10, 2010. Mood, aside from objecting to the government's argument that the Couch Images should be considered as part of an assessment of Mood's persona, also denied that he was the adult male depicted in the Couch Images.

Additionally, the government's assertion that Mood is the adult depicted in the Couch Images depends on a sophisticated technical analysis by a forensic anthropologist which would require the Court, if it choose to consider them, to engage in a *Daubert/Kumho* hearing and analysis. Such a process is described in the *Procedural Order: Trace Evidence March 2010* prepared by Judge Nancy Gertner of the District of Massachusetts (available on a Google search).[2] Judge Gertner's order explains the complexities of such a hearing and the analysis which must follow to come to the conclusion on a scientific analysis by an expert. Given that the government excluded the Couch Images from guideline consideration, and that an evidentiary hearing would be necessary to assess whether or not Mood is the individual displayed in the images, the Couch Images should not be brought into sentencing consideration through the back door, so to speak. The Court is satisfied the Couch Images are not to be considered in assessing an appropriate sentence in this case.

C.

As to Mood, he is a 72 year old married white male with a Master of Arts degree

---

[2] Judge Gertner's order cites a 2009 report to Congress by the National Research Counsel's Committee on Identifying The Needs of The Forensic Science Community entitled *Strengthening Forensic Science in the United States: A Path Forward*. A copy of Judge Gertner's order may be found at: www.mad.uscourts.gov/boston/pdf/ProcOrderTraceEvidenceUPDATE.pdf (last visited July 12, 2010)

in elementary education. His wife has a Ph.D. and works as a research consultant for the National Institute of Health. She also is a professor and research scientist at Wayne State University. The Moods have five (5) adult children.

Mood began his work life as a public school teacher. From 1975 to 1982, he owned and directed a child care center. From 1990 to 1992, he was a lecturer and teacher at a local university. In the late 90s and up to the time he retired in 2005, he owned a company which remodeled homes.

Mood, in his own words, had a terrible childhood and was constantly at odds with his parents. Again, in Mood's words, he has led a life of emotional and psychological stress. Since 2004 he has been under the care of a licensed psychologist. His psychological health is only fair. He has the medical problems usually associated with a man of 72 and more.

According to the Presentence Report, Mood suffers from a fetish known as Infantilism, which manifests itself in a desire to wear diapers and regress back into a child who soils himself.[3]

The Presentence Report states:

> According to records provided by Dr. Dennis Sugrue, the defendant has been attending therapy since August of 2004. Mood was found to be highly motivated in therapy, and his gains have been considerable. The defendant has been relentless in his desire to confront internal conflicts that prompted infantilism, extreme masochistic behavior, and an obsession with and fear of pedophile behavior. The defendant eventually came to feel absolved for his childhood transgressions, imagined and real. He came to no longer

---

[3] A Google search using the term "Infantilism" brings up several cites where more information can be found about the disorder, including http://understanding.infantilism.org (last visited July 13, 2010)

5

see himself as a monster, but, rather, as a survivor who as a
child deserved to be loved but instead was neglected due to
no fault of his own.  He began to find comfort in the love and
nurture that can come from adult relationships without
having to regress to an infantile persona.  With the easing of
irrational guilt, his obsession with pedophilia dissipated.  He
felt he could finally lay to rest his fear of being a threat to
children.  He no longer felt drawn to self-abuse, nor did he
need to wear a chastity belt to feel safe from his own
impulses.  All of his sado-masochistic paraphernalia as well
as his diapers, pacifiers, and footed pajamas have been
disposed of.  The defendant has also worked on adult sexual
intimacy issues and he and his wife have taken tremendous
strides towards healing their relationship.

The psychologist appointed by the Court to conduct an independent

psychological evaluation reports that Mood scores in the low risk range as to:

- truthfulness
- sexual adjustment
- child molest behavior
- probability of sexual assault
- indicators of incestuous behavior
- exhibitionism
- violence
- antisocial behavior
- symptoms of distress and anxiety
- judgment

The Summary and Recommendation in the psychologist's report states:

In formulating my opinions and recommendations about
Dervin Mood, this examiner took into consideration that he
has no prior sex offenses nor any background of such
allegations; he has no prior felony criminal involvement; he
has a number of positive and stable relationships in the
community and, therefore, a good "support system"; he has
a decent employment background; he is academically
interested for future betterment; he is not mentally ill, that is,
he does not suffer from a substantial disorder of thinking or
mood that impairs his reality testing or his cognitive or
emotional capacity to cope with life stressors, and, he does
not present as harboring antisocial or strongly narcissistic
personality traits.

6

> Dervin Mood was significantly impacted and impaired by the "Online Disinhibition Effect" on the Internet, allowing him to take risks and engaging behaviors that he would not have chosen had the situation presented itself in real life.
>
> Dervin Mood is an excellent candidate for continued successful treatment. The lack of criminal background, combined with his motivation for treatment and willingness to take responsibility for his actions present a hopeful case for any clinician.
>
> It is my hopes that Dervin Mood is not sentenced in such a manner that he will be incarcerated.

D.

Having said all of this, the Court begins with the recognition that Mood's Guidelines range is 33-41 months. The role of the Guidelines, however, in fashioning an appropriate sentence in child pornography cases is not without difficultly or controversy.[4] That is, the Guidelines range may be inconsistent with a sentence imposed by application of the factors under 18 U.S.C. § 3553(a).[5] In *United States v. Dorvee*, 605 F.3d 84, 95 (2ᵈ Cir. 2010), the Court of Appeals for the Second Circuit, in

---

[4]For further discussion as to the sentencing disparity which some believe has arisen from the application of child pornography Guidelines *see* criminal law blog article *Child Pornography: Judicial Chaos Leads to Horrific Sentencing Disparities,* at www.johntfloyd.com/blog/2010/01/20/child-pornography-judicial-chaos-leads-to-horrific-sentencing-disparities/ (last visited July 8, 2010). In his remarks at a sentencing symposium, Judge William K. Sessions, III, Chief District Judge for the District of Vermont and Chair, U.S. Sentencing Commission, acknowledged the "divergence" of opinion on the application of the guidelines to child pornography cases and stated that although there are no proposed guidelines changes at this point, the commission is "doing research in regards to child pornography sentencing." Hon. William K. Sessions III, Judicial Discretion: A Look Forward and a Look Back Five Years After *Booker* (Feb. 18, 2010), in 22 FED. SENT'G REP. 297, 300 (2010).

[5]One court went so far as to simply say in many cases the Guidelines recommendations for cases involving child pornography are "illogical." *United States v. Hanson*, 561 F. Supp. 2d 1004, 1011 (E.D. Wis. 2008).

finding a 233 month sentence following a conviction of distribution of child pornography procedurally and substantively unreasonable, commented on this, stating:

> These errors were compounded by the fact that the district court was working with a Guideline that is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires. Sentencing Guidelines are typically developed by the Sentencing Commission using an empirical approach based on data about past sentencing practices. *See Rita*, 551 U.S. at 349, 127 S.Ct. 2456. However, the Commission did not use this empirical approach in formulating the Guidelines for child pornography. Instead, at the direction of Congress, the Sentencing Commission has amended the Guidelines under § 2G2.2 several times since their introduction in 1987, each time recommending harsher penalties. *See* United States Sentencing Commission, *The History of the Child Pornography Guidelines*, Oct. 2009, available at http://www.ussc.gov/general/20091030_History_Child_Pornography_Guidelines.pdf (last visited April 19, 2010).

and

> District judges are encouraged to take seriously the broad discretion they possess in fashioning sentences under § 2G2.2 -- ones that can range from non-custodial sentences to the statutory maximum -- bearing in mind that they are dealing with an eccentric Guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results.

*Id*. at 98. The Second Circuit recently vacated another long term prison sentence for a child pornography defendant which was driven by application of the child pornography Guidelines. In *United States v. Tutty*, __ F.3d. __, 2010 WL 2794601 (2d Cir. July 16, 2010), the defendant's initial guidelines range was 41 to 51 months but, due to application of five sentencing enhancements under U.S.S.G. § 2G2.2, his offense level increased 16 levels, resulting in a guidelines range of 168 to 210 months. The Second Circuit held that the district court committed procedural error "when it concluded that it

8

could not consider a broad, policy-based challenge to the child pornography Guidelines" and made clear that a district court "*may* depart from the Guidelines based solely on a policy disagreement, even where the disagreement applies ot a wide calss of offenders or offenses." *Id.* at *3 (emphasis in original).

Moreover, the Sixth Circuit has found reasonable sentences in child pornography cases that significantly varied from the Guidelines range. In *United States v. Weller*, 330 Fed. Appx. 506 (6th Cir. 2009), the Sixth Circuit affirmed a 10 year sentence for a defendant who was convicted of being a possessor, organizer, and distributor of child pornography despite having a Guidelines range of 324 to 405 months.

In *United States v. Prisel*, 316 Fed. Appx. 377, 2008 WL 4899451 (6th Cir. 2008) and *United States v. Stall*, 581 F.3d 276 (6th Cir. 2009), the Sixth Circuit upheld child pornography sentences of one (1) day incarceration followed by an extended period of supervised release and/or home confinement. Both sentences were departures from Prisel's Guidelines range of 27-33 and Stall's range of 57-71 months. Both Prisel and Stall were, like Mood, possessors of child pornography, not distributors.[6]

And so too is the case here.

As noted above, the sentence of the Court is that Mood serve one (1) day in custody to be followed by five (5) years of supervised release; a special assessment of

---

[6]There is some indication that district judges differentiate in sentencing between offenders involved in the production and distribution of child pornography and offenders who receive and possess the pornography. A careful analysis of the Results and Survey of United States District Judges January 2010 through March 2010 from the United States Sentencing Commission (June 20010) shows that district judges tend to believe the that Guidelines tend to produce appropriate sentencing in the context of production and distribution, but are less convinced when it comes to receipt and possession.

$100.00 be paid and a $5,000.00 fine.

During the first year of supervised release, Mood shall participate in the home confinement program. During this time, Mood will remain at his place of residence except for employment and other activities approved by the probation officer. Mood will maintain a telephone at his place of residence without "call forwarding," a modem, "Caller ID," "call waiting," or portable cordless telephones for the above period. At the direction of the probation officer, Mood shall wear an electronic monitoring device and follow electronic monitoring procedures as specified by the probation officer. The cost of electronic monitoring is waived.

Mood shall make monthly payments on any remaining balance of the fine at a rate and schedule recommended by the Probation Department and approved by the Court.

The following special conditions of supervised release are also imposed:

1. Mood shall participate in a program approved by the United States Probation Department for mental health, including but not limited to, sex offender treatment. This may be satisfied by continued treatment by Dr. Dennis P. Sugrue.

2. Mood shall comply with all applicable requirements to register as a sex offender, and adhere to any state, local or federal law for sex offenders.

3. Mood shall not obtain a residence without prior approval from the Probation Officer.

4. Mood shall not be involved in any internet activity unless approved by the Probation Department.

5. Mood shall allow the Probation Department or a computer expert as approved by the Probation Department, to review all available programs, hardware, software and e-mail addresses associated

      with his computer use.

6. Mood shall not visit any location that would allow him to access the internet without permission of the Probation Officer.

7. Mood shall allow the Probation Department to place any filter, or monitoring device on any computer system.

8. Mood shall not purchase, sell, view or possess any form of pornography, sexually explicit or sexually orientated materials, including visual, auditory, telephonic, or electronic media, computer programs or services.  Mood shall not patronize any place where such material or entertainment is available and shall not utilize or possess any sex-related telephone numbers.

9. Mood shall not frequent places where minors congregate or gather.

10. Mood shall not seek, obtain, or maintain any residence, employment, volunteer work, church or other activities involving minors in any way without the approval of the Probation Department.

11. Mood shall not have any contact with individuals under the age of 18 without the express permission of the Probation Department.

E.

In imposing this sentence, the Court finds it is sufficient but not greater than necessary to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public and rehabilitation of the defendant, and the Court has taken into consideration the factors under § 3553(a):

(1) The nature and circumstances of the offense, and history and characteristics of defendant.

(2) The need for the sentence imposed --

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
>
> (3) The kind of sentences available.
>
> (4) The kinds of sentence and the sentencing range established for --
>
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines.
>
> (5) Any pertinent policy statements [issued by the Sentencing Commission.]
>
> (6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.
>
> (7) The need to provide restitution to any victims of the offense.

Particularly as to the §3553(a) factors:

> 1. The nature and the circumstances of the offense and the history and characteristics of the defendant:
>
> This factor has been adequately described in Defendant's Sentencing Memorandum (Doc. No. 28) as follows:[7]
>
> > Mr. Mood is 73 years old, and but for this case has

---

[7] Much of what follows has already been described above.

never been in trouble with the law. As demonstrated by his history and the letters submitted to the Court, Mr. Mood has lived a productive, law-abiding life, in which he has touched a great many people in very positive ways. Much of his life involved him raising, teaching and providing necessary assistance to his children, including at-risk children. Notwithstanding that he had regular access to children in circumstances where Mr. Mood had the opportunity to abuse them, there have been zero complaints or allegations that he ever mistreated a child.

As depicted in the reports of both Dr. Sugrue and Dr. Rasmussen, Mr. Mood's commission of the offense of conviction is the direct result of severe psychological disorders that arose when he was a child and under which he suffered throughout his childhood, adolescence and adult life. But for those disorders, and but for the relative anonymity afforded by internet, Dr. Rasmussen (the Court-appointed evaluator) opined that "one could conclude that. . .Dervin Mood would likely not have discovered or pursued illegal images," and that this anonymity ". . . [allowed] him to take risks and [engage in] behaviors that he would not have chosen had the situation presented itself in real life." (See Rasmussen report, pp. 16, 17).

Both Drs. Sugrue and Rasmussen believe that Mr. Mood is not sexually attracted to children, and his commission of these offenses does not indicate any sexual attraction or other criminal animus towards children, but rather reflected Mr. Mood's psychological coping with his disorders. It was unlawful coping to be sure, but not indicative of any predisposition to harm children. In this regard, it is significant to note again that, out of over 26,000 images found on his computer, only 39 constituted child pornography. This is in stark contrast to the typical child pornography case where one often finds thousands of such images attributed to an offender.

2. The need for the sentence imposed --

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

13

> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner:
>
> These factors have been adequately dealt with in Defendant's Sentencing Memorandum as follows:
>
> in these circumstances a probation sentence is fair and therefore will not signal any disrespect for the law. Nor will such a sentence signal to others encouragement to commit such offenses. Mr. Mood's circumstances are *sui generis*, so far out of the heartland of cases that no one reasonably could argue that a probation sentence in light of them will constitute encouragement to others.

3. The kind of sentences available:

> Probation and extended supervised release under comprehensive limitations is not prohibited.

4. The kinds of sentences and the sentencing range established for the offense of conviction:

> The guidelines are advisory and the variance from them in the sentence imposed is not prohibited.

5. Any pertinent policy statements [issued by the Sentencing Commission]:

6. The need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct:

> Whatever disparity which may exist is warranted given the *sui generis* character of Mood's offense. As noted above, 1 day sentences in the circumstances here are not unknown.

7. The need to provide restitution to any victims of the

14

offense:

> Restitution is not an element here.

### F.

In sum, the Court has imposed a non-custodial sentence after taking into consideration the following:

- the number of images involved
- the age and health of Mood
- Mood's exemplary background excluding the conduct which lead to his presence in Court
- the vicissitudes of Mood's early life and its impact on his psychological makeup
- Mood's network of family support, particularly the strong support of his wife, as evidenced by the numerous letters the Court has received
- Mood's current regime of psychological counseling which will continue and which would be interrupted by a custodial sentence
- the unlikelihood that Mood will recidivate
- Mood's acceptance of responsibility

### G.

Finally, and importantly, nothing in what has been said today or in the sentence imposed should be construed as a diminishment of Mood's criminal conduct, the manner in which he was involved in child pornography, or in the seriousness of his offense conduct. As another judge in this Circuit put it, "[c]hild pornography must be universally condemned, and even a defendant with highly compelling personal

15

characteristics should not be fully excused from such a heinous crime." *United States v. Stern*, 590 F. Supp. 2d 945 (N.D. Ohio 2008). The Court is satisfied that the sentence imposed here is consistent with the purposes of sentencing and makes clear that Mood's crime has not gone unpunished.

       S/Avern Cohn
       AVERN COHN
       UNITED STATES DISTRICT JUDGE

Dated: July 30, 2010

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 30, 2010, by electronic and/or ordinary mail.

       S/Julie Owens
       Case Manager, (313) 234-5160